**Electronically Filed
Intermediate Court of Appeals
30239
19-MAY-2011
07:49 AM**

NO. 30239

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JANE DOE, Plaintiff-Appellant/Cross-Appellee, v.
JOHN DOE, Defendant-Appellee/Cross-Appellant


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 06-1-007K)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, and Leonard, J.;
and Ginoza, J., dissenting)

Plaintiff-Appellant/Cross-Appellee Jane Doe (**Wife**) appeals from the Family Court of the Third Circuit (**Family Court**) Family Court's: (A) August 4, 2009 Order Re: (1) Plaintiff's Motion to Modify/Extend Spousal Support and Child Support Orders, filed on December 31, 2008, and (2) Plaintiff's Motion for Attorney's Fees, filed on February 13, 2009 (**Modification and Fees Order**); and (B) December 3, 2009 Order Denying Plaintiff's Motion for Reconsideration filed on August 14, 2009 (**Order Denying Reconsideration**).[1] Defendant-Appellee/Cross-Appellant John Doe (**Husband**) cross-appeals from the Modification and Fees Order, the Order Denying Reconsideration, and the Family Court's December 3, 2009 Order re: Attorney's Fees and Costs (**Order re Amount of Fees**).

---

[1] The Honorable Aley K. Auna, Jr. presided.

I.    BACKGROUND

A.    <u>The Initial Proceedings</u>

On May 24, 2007, the Family Court issued a divorce decree dissolving the marriage between the parties (**Decree**).  The Decree included, *inter alia*, the following provisions:

> (5)    <u>ALIMONY</u> Beginning with a first payment on January 1, 2007 [Husband] shall pay to [Wife] the sum of $2,500.00 per month as and for alimony, to be paid on the first day of each month.
>         After twenty-four (24) consecutive monthly payments, alimony shall terminate with a final payment due December 31, 2008.  Notwithstanding, alimony shall earlier terminate upon the death of [Husband], the death of [Wife], or [Wife's] remarriage, whichever should happen first.
> (6)    <u>CHILD SUPPORT</u> Beginning with a first payment on January 1, 2007, [Husband] shall pay to [Wife] the sum of $690.00 per month per child, or the total monthly sum of $1,280.00, as and for child support, to be paid on the first day of each month.
>         . . .
>         Child support shall be recalculated when alimony ends.

Wife appealed from the Decree and Husband cross-appealed.  On June 23, 2010, this court issued a memorandum opinion affirming in part, vacating in part, and remanding for further proceedings.  See Doe v. Roe, No. 28596, 2010 WL 2535138, at *10 (Haw. App. June 23, 2010) (mem.) (**Doe I**), *cert. denied*, 2010 WL 4656459 (Haw. Nov. 16, 2010).

As discussed in Doe I, in her first appeal, "Wife contend[ed] the family court erred in awarding her 'transitional' alimony and in finding that it would not be just and equitable to award her with permanent alimony."  Id. at *8. In conjunction with our review, we stated:

> Here, the family court found that Wife would be left with substantial assets under the orders of the court, and that under the circumstances of this case, it would not be just and equitable to award permanent alimony to Plaintiff rather, transitional alimony would be more appropriate.  The court then ordered Husband to pay alimony to Wife in the amount of $2,500 per month for a period of two years.
>
> In making its award, the court considered that:  (1) Husband had the greater earning capacity and had been the primary financial supporter of the family; (2) Wife had worked on and off during the years, was relatively young, did not have any physical limitations, and had the ability to be self-sustaining; and (3) the parties had a relatively affluent lifestyle.  The court examined the most recent

2

> income and expense statement produced by Wife, which showed
> no income and $12,760 in expenses, all of which were paid
> for by Husband. The court found that Wife would have $4,400
> in monthly expenses after the divorce, as she would not have
> to pay for the mortgage ($5,000), real property taxes
> ($260), hired help ($800), or childcare expenses for the
> nanny ($2,300). Also, Husband had been paying $3,500 per
> month for temporary family support, as well as the expenses
> for the marital residence since March 2006.
>
> The trial court properly considered the relevant
> factors, and its decision not to award Wife permanent
> alimony was not an abuse of discretion.

Id. at *9 (internal quotation marks, brackets and ellipsis omitted).

Accordingly, we held, *inter alia*, that the Family Court properly considered the relevant factors under Hawaii Revised Statutes (**HRS**) § 580-47 and did not abuse its discretion in denying Wife's request for permanent alimony. In addition, we held that the Family Court did not clearly err in its child support calculations. Id. at *9.

On October 7, 2010, Wife filed an application for writ of certiorari. On November 16, 2010, the supreme court entered an order rejecting wife's application.

B.  The Instant Proceedings

On December 31, 2008 (the day that alimony under the Decree ended), Wife filed a Motion to Modify/Extend Spousal Support and Child Support Orders (**Modification Motion**), requesting permanent alimony and increased child support. On February 13, 2009, Wife filed a Motion for Attorney's Fees (**Fees Motion**), requesting that Husband be required to pay the attorney's fees and costs incurred in conjunction with the Modification Motion.

On August 4, 2009, the Family Court issued the Modification and Fees Order, determined that "Plaintiff has not demonstrated any change in her circumstances as to justify a modification of alimony," and thus denied Wife's request to modify spousal support to grant her a "permanent award of alimony." The Family Court did, however, continue the previously

3

modified child support, and granted Wife's motion for attorney's fees. The August 4, 2009 order concludes:

> 1. Plaintiff's Motion to Modify/Extend Spousal Support and Child Support Orders, filed on December 31, 2008, is granted in part and denied in part, as follows:
> a. The request to modify spousal support is denied.
> b. The request to modify child support is granted.
>
> 2. The prior order increasing child support to $2,470 per month, or $1,235 per child per month, shall continue.[2/]
>
> 3. Plaintiff's Motion for Attorney's Fees, filed on February 13, 2009, is granted. [Plaintiff's attorney] shall file his affidavit showing detailed time spent and costs incurred . . . [and] shall draft a proposed order awarding attorney's fees and costs leaving a blank space for the amount and due date. The Court will insert the amount and date due after review of the relevant pleadings.
>
> 4. All other requests or motions not specifically addressed in this order are hereby denied.

On August 14, 2009, Wife filed a declaration of counsel regarding fees, which sought $15,435.94 for attorney's fees and costs. On December 3, 2009, the Family Court entered an order awarding Wife $9,000.00 for attorney's fees and costs.

On appeal, Wife asserts that the Family Court erred in: (1) denying wife's request to extend and increase spousal support; (2) its determination of the parties' incomes for purposes of calculating child support; and (3) allowing Husband a $2,300 per month child care credit for the use of a nanny.

In his cross-appeal, Husband asserts that the Family Court abused its discretion by ordering him to pay Wife's attorney's fees and costs.

For the reasons discussed below, we affirm.

II. STANDARDS OF REVIEW

> Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on

---

[2] On March 5, 2009, the Family Court issued an order temporarily increasing child support from $1,280 ($690 per child per month) to $2,470 per month ($1,235 per child per month).

4

> appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and [their] decision[s] clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A[n] FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
>
> On the other hand, the family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness.["]

Id.

## III. DISCUSSION

### A.   Modification of Spousal Support

A party may seek revision of a spousal support order where there has been a material change in financial or physical circumstances, or upon a showing of other good cause. See HRS § 580-47(d);[3] see also Vorfeld v. Vorfeld, 8 Haw. App. 391, 401, 804 P.2d 891, 897 (1991). A spousal support modification proceeding is not a review hearing, but "a new hearing based on changed circumstances" where "the burden is on the moving party to prove his or her entitlement to a modification." Saromines v. Saromines, 3 Haw. App. 20, 28, 641 P.2d 1342, 1348 (1982) (citations omitted).

---

[3]   HRS § 580-47(d) (2006) provides, in pertinent part:

> Upon the motion of either party supported by an affidavit setting forth in particular a material change in the physical or financial circumstances of either party, or upon a showing of other good cause, the moving party, in the discretion of the court, and upon adequate notice to the other party, may be granted a hearing . . . . The court, upon such hearing, for good cause shown may amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be ordered.

In <u>Vorfeld</u>, this court held that a request to modify court-ordered spousal support presents the Family Court with the following questions: (1) have any of the relevant circumstances materially changed; (2) if yes, should there be a modification; and (3) if there should be a modification, what should the modification be. <u>Vorfeld</u>, 8 Haw. App. at 402-03, 804 P.2d at 897-98. <u>Vorfeld</u> further provides:

> When answering any of the above questions, the following two rules apply: Any part of the payor's current inability to pay that was unreasonably caused by the payor may not be considered and must be ignored. <u>Any part of the payee's current need that was caused by the payee's violation of his or her duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage may not be considered and must be ignored</u>.

<u>Id.</u> (citation omitted; emphasis added).

In her points of error, Wife does not challenge any of the Family Court's findings of fact (**FOFs**).[4] Instead, Wife contends that, in denying her request to modify spousal support, the Family Court "failed to consider and make express findings respecting the marital standard of living, Wife's ability to maintain that standard of living without spousal support, and Defendant's ability to provide support, while maintaining that standard of living for him, considerations expressly required . . . pursuant to <u>Vorfeld</u>[.]" It appears from Wife's argument on this appeal that, in significant part, Wife is still challenging the Family Court's decision in the Divorce Decree to require alimony payments, for a transitional period of two years only, in the amount of $2,500 per month.[5]

---

[4] In conjunction with Wife's argument regarding child support, however, Wife asserts that "FOF No. 24 is in error." FOF 24 states: "The Child Support Guidelines Worksheet dated February 19, 2009 (Ex. C) appears to accurately reflect the current financial income of the parties."

[5] Wife argues, for example: "As argued in ICA No. 28596 (pending decision) the trial court's initial award of $2500 in alimony in conjunction with the $1380 per month child support award was not sufficient income to meet Wife's basic living expenses, and not even close to sufficient to maintain the standard of living established during the marriage. . . . With respect to

(continued...)

In the Modification and Fees Order, the Family Court makes numerous findings of fact regarding Wife's post-divorce circumstances, relevant to the Vorfeld analysis, as well as stating the legal authorities relied on and its decision on the modification request. As its baseline, however, the Family Court starts with its prior factual findings and legal conclusions regarding alimony, which were made in conjunction with the Divorce Decree:

> The Court is aware that this case is on appeal and that one of the issues on appeal is alimony. For the purposes of rendering this decision, the Court will assume that its prior findings and conclusions regarding alimony will remain unchanged.

The Family Court then set forth its (unchallenged) FOFs regarding the post-Decree circumstances of the parties relevant to Wife's request for continued and increased alimony, including:

> 4. Plaintiff has been employed at Polynesian Adventure Tours since March of 2007 at a rate of $11 per hour. She has not received a bonus or raise since she was hired.
>
> 5. Plaintiff obtained her Commercial Driver's License in order to obtain additional work as a driver for Polynesian Adventure Tours at a rate of $15 per hour. However, due to the poor economy and drop in tourism, there have not been sufficient hours available as either a reservations agent or driver to work full-time. Plaintiff used to work 40 hours per week for Polynesian Adventure Tours, but now works less than 20 hours per week.
>
> 6. Once her ours dropped below 20 hours ber week at the end of 2008, Plaintiff lost her health insurance benefits. She has not been able to afford to purchase health insurance on her own.
>
> 7. In September 2008, Plaintiff enrolled in the Hawaiian Islands School of Massage, a massage therapy school. She will obtain a license in massage therapy ("LMT") in August or September of 2009. Plaintiff expects to earn more than she is making now once she obtains her LMT.
>
> 8. Plaintiff is healthy and able-bodied. Since the divorce trial, she has not suffered any injury or illness which materially interfered with her ability to work.

---

[5](...continued)
Plaintiff's ability to maintain the marital standard of living without spousal support, it was clear she was not able to do so even with the $2500 per month award that expired December 31, 2008."

9.     Since March 2007, Plaintiff has not received any correspondence from any prospective employers and she does not keep copies or correspondence sent to prospective employers.

10.     Since March 2007, Plaintiff has not kept copies of any job applications.

11.     Since March 2007, Plaintiff has not kept copies of any written inquiries made regarding further education.

12.     Since March 2007, Plaintiff has not received any responses to inquiries regarding further education that she can recall, and she has no copy of any responses received, if any.

13.     Plaintiff acknowledges that, following the divorce, she was under a duty to continually exert reasonable efforts to attain self-sufficiency at the highest level possible.

14.     Plaintiff acknowledges that, following the divorce, she had a duty to get the best full-time job she could.

15.     Plaintiff acknowledges that, following the divorce, if she needed further education to get a better job, it was her duty to obtain it.

16.     Plaintiff accurately describes her job-seeking efforts since the divorce trial in Exhibit O.  Ex. O, Page 9.

17.     Between the divorce trial and May 2009 Plaintiff made twelve job applications:  once in January 2007; five times in February 2007; once in February 2008; once in March 2008; twice in June 2008; once in January 2009; and, once in February 2009.  Ex. O, Page 9.

18.     Plaintiff has no pending job applications submitted to prospective employers and is not working on any job applications.

19.     At the divorce trial, Plaintiff presented no other vocational rehabilitation or enhancement plan involving further training or education.

20.     Plaintiff has not exerted sufficient effort to secure the best employment available.

21.     Some of the assets awarded to Plaintiff from the divorce trial may have gone down in value following the divorce.

22.     Plaintiff has not demonstrated any change in her circumstances as to justify a modification of alimony.

23.     Since the divorce trial, Defendant's circumstances remain relatively the same.

8

Based on these FOFs, the Family Court, in essence, concludes that Wife failed to meet her burden to prove that she was entitled to a modification of the original spousal support awarded in the Decree.  In its Conclusions of Law (**COLs**), the Family Court sets forth the legal underpinnings for its determination that Wife's request for a modification should be denied:

> 1.    HRS § 580-47(d) provides that upon the showing of "a material change in the physical or financial circumstances of either party, or upon a showing of other good cause" the Court may conduct a hearing and, "for good cause shown may amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be order." See also, Vorfeld v. Vorfeld, 8 Haw. App. 391 (1991).

> 2.    When deciding whether there is good cause to modify court-ordered spousal support, the Court must consider the following:

> First, it must be accepted that a spousal support modification hearing is not a review hearing or a rehearing of the original hearing.  It is a new hearing based on changed circumstances.
> Second, it must be accepted that all of Hawaii Revised Statutes Section 580-47's applicable factors were considered when the initial determination was made, and with that fact in mind the burden is upon the moving party to prove his or her entitlement to a modification.
> Third, the receiving party is always under a duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage and will not be allowed to benefit from the consequences of a violation of that duty.
> Fourth, the paying party is always under a duty to exert reasonable efforts to maintain his or her ability to pay what he or she has been required to pay and will not be allowed to benefit from the consequences of a violation of that duty. Saromines v. Saromines, 3 Haw. App. 20, 28 (1982) (citations omitted).

> 3.    Even if there has been a material change in circumstances, the Family Court may, in the exercise of its wide discretion, decline to modify alimony.  HRS § 580-47(d); Vorfeld, supra, 8 Haw. App. at 403.

> 4.    As with any decision committed to the discretion of the Family Court, a decision not to modify alimony despite a change in circumstances will not be set aside unless it disregarded rules or principles of law or practice to the substantial detriment of a party litigant, or it clearly exceeded the bounds of reason. Schiller v. Schiller, 120 Hawaii 283 (App. 2009).

5. A motion which seeks additional alimony to enable employment not contemplated at the time of the original divorce will be denied. <u>Lumsden v. Lumsden</u>, 61 Haw. 338 (1979).

6. In deciding whether there has been a material change in circumstances the Family Court may consider only what is in the record from the time of the original order. <u>Vorfeld</u>, <u>supra</u>, 8 Haw. App. at 403-404.

7. The Family Court has the continuing authority to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a significant change in the circumstances of either party or the child. HRS § 580-47(c).

8. The Court's original alimony order for two years was based upon a thorough consideration of the respective merits of the parties, the relative abilities of the parties, the condition in which each party would be left by the divorce, and the burdens imposed upon each party for the benefit of the parties' children, as well as (a) the financial resources of the parties, (b) the ability of Plaintiff to meet her needs independently, (c) the duration of the marriage, (d) the standard of living established during the marriage, (e) the age of the parties, (f) the physical and emotional condition of the parties, (g) the usual occupation of the parties during the marriage, (h) the vocational skills and employability of the party seeking alimony, (i) the needs of the parties, (j) the custodial and child support responsibilities of the parties, (k) the ability of Defendant to meet his own needs while meeting the needs of Plaintiff, (l) other factors which measured the financial condition in which the parties would be left, and (m) the probable duration of Plaintiff's need.

Upon consideration of and in conjunction with these FOFs and COLs, the Family Court determined that Plaintiff has not demonstrated changes in her circumstances justifying her request to modify the alimony (FOF 22) and, accordingly, denied her request.

Wife's principle argument on appeal is that the Family Court did not sufficiently consider the standard of living established during the marriage because it did not make specific findings about the marital standard of living. The Family Court did, however, specifically cite the marital standard of living as a factor considered in conjunction with the initial award of alimony for a transitional two-year period (COL 8). The Family Court expressly began its analysis based on the findings and conclusions that supported its initial alimony determination.

10

As noted above, the Wife's arguments on appeal are interspersed with her contention that the initial alimony award was insufficient to maintain her marital standard of living. However, that issue was addressed in Doe I and is not before the court on this appeal.  Wife argues, too, that Husband has the capacity to support her, presumably permanently, because he has substantial job security and income, particularly in comparison to hers.  However, Wife admits, as the Family Court found, that "his lifestyle had not really changed at all since the divorce."

The material change in circumstances identified by Wife is that "[w]ithout training, education, or experience, she can not reasonably be expected to improve her income potential beyond the pay scale she has historically earned."  Wife points out that she had to draw down on her "Fidelity stock account" (an asset awarded to Wife in the Decree) to cover monthly expenses because she was working less.  Yet, Wife does not challenge the findings that the Family Court relies upon in the Modification and Fees Order.  The Family Court found that there were changes in Wife's circumstances inasmuch as her hours of work have dropped, she has lost her health benefits, and some of the assets awarded to her in the Decree had gone down in value.  However, the court also found that Wife had not exerted reasonable and sufficient efforts to become self-sufficient even though she was healthy, able-bodied, and aware of her duties to take advantage of the period of transitional alimony by seeking a better job or vocational rehabilitation, training, or education in order to become self-sufficient.  Fully considering the circumstances of the parties, including the negative changes in Wife's circumstances and the part of Wife's current need that was caused by Wife's violation of her duty to exert reasonable efforts to attain self-sufficiency, the Family Court determined that Wife's request was not justified.

Based on the record in this case and the arguments made, we cannot conclude that the Family Court clearly erred in

its factual findings related to spousal support or abused its discretion in denying the Modification Motion.

B.    Income of the Parties for Calculating Child Support

Wife argues that the Family Court erred in FOF 24 that the Child Support Guidelines (**CSG**) Worksheet entered into evidence as Exhibit C "appears to accurately reflect the current financial income of the parties." Based on this finding, the court ordered that its previous order temporarily increasing child support to $2,470 per month ($1,235 per child per month) to continue.

1.    Husband's Income

The CSG worksheet used by the court to arrive at the $2,470 per month child support figure lists Father's monthly gross income at $28,173. Wife does not specifically argue that this finding is clearly erroneous, but contends that "Husband's income should be set at a minimum of $36,000 per month, his income in 2008." Wife gives numbers allegedly representative of Husband's income for 2008 and 2009, but fails to explain how she arrives at those figures or how they are supported by a factual basis in the record.

Regardless of Wife's assertions, there was substantial evidence in the record to support the court's finding of Husband's $28,173 monthly gross income. In the record are two of Husband's paycheck stubs from March 2009 which showed a monthly "gross pay" of $25,673.34 ($12,604.67 + $13,068.67). Husband added to his salary imputed interest of 2% on $1,500,000 ($30,000 per year / 12 months = $2,500 per month). The imputed interest of $2,500 per month, plus the $25,673.34 in gross pay per month, equates to $28,173.34 in gross monthly income. The Family Court did not abuse its discretion in this regard.

2.    Wife's income

Wife argues that her gross income as listed on the CSG Worksheet ($1,907 per month) is "not supported by any evidence or

testimony" and asserts that her income should be lower: a maximum of $1,304 per month.

The $1,907 per month figure attributable to Wife is imputed income.[6] The Hawaiʻi Child Support Guidelines allow the court to impute income to a parent when that parent is not employed full-time or is employed below his or her full earning capacity.[7]

Based on the substantial evidence in the record, it was not clearly erroneous for the Family Court to impute to Wife an earning capacity of $11 per hour for a full-time job. Wife is not employed full-time and is employed below her full earning capacity. Wife makes $11-$15 per hour at her current job and has the capacity to make more: she testified that she was taking massage therapy classes, that licensed massage therapists make between $60-75 per hour, and that if she worked full time as a massage therapist she could make an estimated $4,000 per month. In addition, the court made the uncontested finding of fact that "Plaintiff is healthy and able-bodied" and that "[s]ince the divorce trial, she has not suffered any injury or illness which materially interfered with her ability to work." The Family Court did not abuse its discretion in considering what Wife was capable of earning.

There is substantial evidence in the record to support the Family Court's findings of Husband's monthly gross income and Wife's imputed monthly gross income. As such, the Family Court did not abuse its discretion in calculating child support.

---

[6] Calculated at $11 per hour (the amount Wife makes at her current job) x 40 hours per week = $440 per week. $440 per week x 52 weeks = $22,880 gross income per year. $22,880 / 12 months = $1,906.67 gross monthly income.

[7] The Child Support Guidelines are established by the Family Court in consultation with the Child Support Enforcement Agency. See HRS § 576D-7(a) (2006).

C.    Husband's Child Care Credit Was Not Clearly Erroneous

Wife's final point of error is that the Family Court erred in awarding Husband a $2,300 per month child care credit. This argument is based on an incorrect assertion: the Family Court actually gave Husband a child credit of $2,000, an amount which is supported by substantial evidence in the record.[8]

D.    Husband's Point of Error

As to Husband's sole point of error, we hold that the circuit court did not abuse its discretion in awarding Wife $9,000 in attorney's fees and costs for the modification proceeding. HRS § 580-47(f) (Attorney's fees and costs) provides:

> The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

HRS § 580-47(f) (2006). Here, the Family Court noted in its order that "despite both parties having substantial assets, Defendant's current monthly income is more than fourteen (14) times than Plaintiff's current monthly income" and found that a fee and cost award to Wife "would be appropriate, just, and equitable under these circumstances."

We conclude that, given the considerations under HRS § 580-47(f), the Family Court did not abuse its discretion in its awarding of attorney's fees and costs to Wife.

---

[8]    Husband testified during the hearing on the motion to modify that he pays the nanny "at least $2,000" per month in salary and used to pay her more than $2,300 per month. Both Husband and Wife testified that they use the nanny's services.

IV.   CONCLUSION

Based on the above, we affirm.

DATED:   Honolulu, Hawai'i, May 19, 2011.

On the briefs:

Michael Zola
for Plaintiff-Appellant/
Cross-Appellee

William C. Darrah
for Defendant-Appellee/
Cross-Appellant

Presiding Judge

Associate Judge

DISSENTING OPINION BY GINOZA, J.

I respectfully dissent with regard to that part of the Memorandum Opinion which affirms the denial of Wife's motion to modify spousal support. As set forth below, I would remand for further proceedings.

In <u>Vorfeld v. Vorfeld</u>, 8 Haw. App. 391, 804 P.2d 891, (1991), this court set out the analysis for considering a request to modify court-ordered spousal support, as follows:

> A motion for the modification of court-ordered spousal support presents the family court with the following three questions.
>
> 1. Have any of the relevant circumstances materially changed?
>
> A material change in the relevant circumstances has occurred when a party's relevant circumstances that are proven to exist at the time of the modification hearing are materially different from the party's relevant circumstances that were proven to exist when the family court entered its spousal support order.
>
> As outlined in *Cassiday v. Cassiday*, 6 Haw. App. 207, 215-16, 716 P.2d 1145, 1151 (1985), *aff'd in part, rev'd in part*, 68 Haw. 383, 716 P.2d 1133 (1986), the relevant circumstances are as follows. The first relevant circumstance is the <u>payee's need</u>. <u>What amount of money does he or she need to maintain the standard of living established during the marriage</u>? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, <u>including the net income producing capability of his or her property</u>, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is the <u>payor's need</u>. <u>What amount of money does he or she need to maintain the standard of living established during the marriage</u>? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?
>
> 2. If the answer to question 1 is yes, should there be a modification?
>
> 3. If the answer to question 2 is yes, what should the modification be?

>When answering any of the above questions, the following two rules apply: Any part of the payor's current inability to pay that was unreasonably caused by the payor may not be considered and must be ignored. Any part of the payee's current need that was caused by the payee's violation of his or her duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage may not be considered and must be ignored. *Saromines v. Saromines*, 3 Haw. App. 20, 641 P.2d 1342 (1982).

8 Haw. App. at 402-03, 804 P.2d at 897-98 (internal citation omitted) (emphases added).

The first Vorfeld question (whether any relevant circumstances have materially changed) should be reviewed under the right/wrong standard. See Davis v. Davis, 3 Haw. App. 501, 506, 653 P.2d 1167, 1171 (1982) (addressing a similar analysis in a child support modification case). For the other two questions (whether there should be a modification and, if so, what should the modification be), "the manifest abuse of wide discretion standard is applicable." Id.

An integral part of the first Vorfeld question is considering the parties' respective "needs", or in other words, the amount of money each needs "to maintain the standard of living established during the marriage." Wife contends that, in denying her request to modify spousal support, the family court "failed to consider and make express findings respecting the marital standard of living, Wife's ability to maintain that standard of living without spousal support, and Defendant's ability to provide support, while maintaining that standard of living for him[.]" Based on the record, I would conclude that the family court did not consider the parties' respective "needs" as required by Vorfeld and thus did not properly address the first Vorfeld question.

In its August 4, 2009 order denying Wife's motion to modify and extend spousal support, the family court made numerous findings of fact focused on Wife's employment status and her job

search efforts since the divorce. The family court ultimately found that "Plaintiff has not exerted sufficient effort to secure the best employment available." While I would not disturb this finding[1] and recognize it is a legitimate part of the modification question, I believe the family court overly focused on this one issue at the expense of the entire relevant Vorfeld analysis.

As asserted by Wife, there is no indication that the family court considered, as required by Vorfeld, whether there were material changes to the amount Wife needed to maintain the standard of living established during the marriage or, more pertinent to this case, her ability to meet that need without spousal support. Without addressing the standard of living established during the marriage, there is no baseline for the Vorfeld modification analysis. Originally, in the Divorce Decree, the family court had determined that "the parties have had a relatively affluent lifestyle with vacation trips from time to time about the world." Therefore, for Wife's modification request, Vorfeld required the family court to at least consider this standard of living in determining any materially changed circumstances.

A crucial factor in this case appears to be whether there has been a material change in Wife's ability to maintain her standard of living without spousal support "[t]aking into account [Wife's] income, or what it should be, including the net income producing capability of [Wife's] property[.]" 8 Haw. App. at 391-92, 804 P.2d at 892 (emphasis added). As noted, the family court addressed at length what Wife's *employment* income "should be" but did not address in any meaningful way the "net income producing capability of [Wife's] property." This is

---

[1] Wife argued this finding was not supported by the evidence.

significant in this case where Wife's ability to maintain her standard of living is based to a large extent on the property or assets she was awarded in the Divorce Decree (i.e., a Fidelity stock account).[2] In the August 4, 2009 order, the family court addressed this issue only to the extent it found that "[s]ome of the assets awarded to [Wife] from the divorce trial may have gone down in value following the divorce." However, the family court did not consider the impact on Wife's ability to maintain her standard of living.

Given the significant drop in the value of the primary asset awarded to Wife at the time of the divorce, the importance of that asset in maintaining her standard of living, and that the family court did not consider or make any findings as to standard of living factors, I would remand for further proceedings to assess all of the criteria set forth in Vorfeld.

---

[2] As established by the family court's February 20, 2007 order, which laid out much of the basis for the divorce decree, Wife was awarded a Fidelity account which at that time was worth $1,151,346. The family court further ordered Wife to make an equalization payment of $437,300 plus interest. In granting a stay of the equalization payment pending the initial appeal, Wife was ordered to place $500,000 in a joint account. Subsequently, mainly due to the downturn in the economy, the remaining value of the Fidelity account substantially decreased. Approximately two years later, based on an account statement ending April 30, 2009, the Fidelity account had a balance of $286,680. From the time of the divorce, Wife has twice withdrawn funds from the Fidelity account to meet her financial needs, the last withdrawal for $20,000.

4